**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BURLINGTON NORTHERN & SANTA
FE RAILWAY COMPANY,
    *Plaintiff-Appellee,*

v.

CHARLES VAUGHN, Chairman of the
Hualapai Indian Tribe, a federally
recognized Indian Tribe; WANDA
EASTER, Finance Director of the
Hualapai Indian Tribe, a federally
recognized Indian Tribe,
    *Defendants-Appellants.*

No. 05-16755

D.C. No.
CV-04-02227-EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Argued and Submitted
October 16, 2007—San Francisco, California

Filed December 7, 2007

Before: Arthur L. Alarcón, David R. Thompson, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

**COUNSEL**

Susan M. Williams (argued), Sarah S. Works, Williams & Works, P.A., Corrales, New Mexico, for the appellants.

Charles G. Cole (argued), Alice E. Loughran, Amber B. Blaha, Steptoe & Johnson LLP, Washington, D.C.; Paul J. Mooney, Jim L. Wright, Fennemore Craig, P.C., Phoenix, Arizona, for the appellee.

---

## OPINION

TALLMAN, Circuit Judge:

The Burlington Northern & Santa Fe Railway Company (BNSF) brought suit against two officials of the Hualapai Indian Tribe, Charles Vaughn and Wanda Easter (the tribal officials), seeking declaratory and injunctive relief against their efforts to enforce or collect the Hualapai Tribe's possessory interest tax against BNSF for use of the railroad's right-of-way through the reservation. The tribal officials filed a motion to dismiss, which the district court denied. The tribal officials bring this appeal.

We address the novel jurisdictional question whether, under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), denial of a tribal sovereign immunity claim is appealable on an interlocutory basis as a collateral order. We hold that it is and proceed to review the district court's ruling on the merits. We affirm the district court's ruling that tribal sovereign immunity does not bar suit against Easter, who is allegedly responsible for enforcing the tax at issue in this suit, but reverse with regard to Vaughn, the Tribe's Chairman, who has no alleged enforcement responsibilities to actually collect the tax. The tribal officials also appeal the district court's denial of their exhaustion of tribal remedies claim. However, they do not assert an adequate basis to permit us to exercise jurisdiction over that claim now, and we dismiss the remainder of this interlocutory appeal.

# I

Viewed in the light most favorable to BNSF, as required on a motion to dismiss, *see Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007), the record reveals the following facts. BNSF[1] operates its railroad on a congressionally granted right-of-way through Arizona that crosses the Hualapai Indian Reservation. BNSF owns title to the right-of-way, free of all claims by the Tribe.

In 1989, the Hualapai Tribal Council enacted a tax by ordinance which imposes a 7% tax on the value of certain "possessory interests" within the Reservation. At oral argument, counsel for the Tribe asserted the tax was intended to be in the nature of a use tax to reimburse the Tribe for the cost of attending railway accidents or blockages since the mainline hosts upward of eighty trains daily that pass at one point through the heart of the tribal administrative center. In 1991, BNSF brought suit challenging the Tribe's authority to apply the tax to the railroad's right-of-way. The parties settled and BNSF agreed to pay a lump sum to the Tribe in lieu of any taxes, interest, and penalties that might otherwise have been assessed against it during tax years 1990 through 2001.

On July 24, 2002, after the settlement agreement had expired, Wanda Easter, the Tribe's finance director, sent tax registration forms to BNSF. BNSF notified the Tribe that it disputed the Tribe's jurisdiction to tax BNSF's operation of the right-of-way. The parties attempted to resolve their disagreement, but were unsuccessful.

BNSF subsequently filed a complaint in the United States District Court for the District of Arizona seeking declaratory and injunctive relief against the Tribe's efforts to enforce or collect the tax. The tribal officials responded with a motion to dismiss, claiming that: 1) the suit is barred by tribal sovereign

---

[1]References to BNSF include BNSF and its predecessors in interest.

immunity, 2) BNSF failed to exhaust tribal remedies, and 3) the tax does not violate federal law. The district court denied the motion, holding that: 1) tribal sovereign immunity did not bar BNSF's claims against the tribal officials, 2) BNSF was not required to exhaust tribal remedies because the tribal court "plainly" lacked jurisdiction, and 3) BNSF's allegation that the tax is unenforceable against it was sufficient to state a claim for relief. The tribal officials appealed.

## II

### A

[1] Our jurisdiction is circumscribed by 28 U.S.C. § 1291, which provides: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." A district court's denial of a motion to dismiss is not a final decision within the meaning of 28 U.S.C. § 1291. *Credit Suisse v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 130 F.3d 1342, 1345-46 (9th Cir. 1997). Nonetheless, the Supreme Court has recognized an exception to the final judgment rule for that "small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action." *Cohen*, 337 U.S. at 546.

[2] We have not previously decided whether a district court's order denying a motion to dismiss on tribal sovereign immunity grounds is a collateral order which may be reviewed on an interlocutory basis. The Tribe persuasively argues that by analogy to qualified immunity appeals under civil rights claims, the rule should be the same when an adverse decision is rendered denying tribal sovereign immunity as a complete defense to proceeding with the litigation. *See Mitchell v. Forsyth*, 472 U.S. 511 (1985). We agree.

[3] As commonly expressed, the collateral order doctrine established in *Cohen* permits interlocutory review of an order that "conclusively determine[s] the disputed question,

resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). All three factors are met in this case.

**[4]** The district court's order "conclusively determine[d] the disputed question," that is, whether the tribal officials are immune from suit, because "there will be nothing in the subsequent course of the proceedings in the district court that can alter the court's conclusion that the defendant[s are] not immune." *See Mitchell*, 472 U.S. at 527.

**[5]** The district court's order is also "effectively unreviewable on appeal from a final judgment." *See Coopers & Lybrand*, 437 U.S. at 468. Tribal sovereign immunity is rooted in federal common law and "is a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). Indian tribes, and tribal officials acting within the scope of their authority, are immune from lawsuits or court process in the absence of congressional abrogation or tribal waiver. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *United States v. Yakima Tribal Court*, 806 F.2d 853, 861 (9th Cir. 1986). As with absolute, qualified, and Eleventh Amendment immunity, tribal sovereign immunity "is an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143-44 (1993) (quoting *Mitchell*, 472 U.S. at 526); *Osage Tribal Council v. U.S. Dep't of Labor*, 187 F.3d 1174, 1179-80 (10th Cir. 1999); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1050 (11th Cir. 1995) ("Tribal sovereign immunity would be rendered meaningless if a suit against a tribe asserting its immunity were allowed to proceed to trial.").

**[6]** Finally, the district court's order "resolve[d] an important issue completely separate from the merits of the action." *See Coopers & Lybrand*, 437 U.S. at 468. Courts have generally found that claims of immunity are separate from the merits of the underlying action. *See, e.g., Mitchell*, 472 U.S. at 527-28; *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 145; *Compania Mexicana de Aviacion, S.A. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 859 F.2d 1354, 1358 (9th Cir. 1988); *Osage Tribal Council*, 187 F.3d at 1180 (holding that whether the Safe Drinking Water Act abrogated the tribe's immunity is "distinct from the underlying merits" of whether the tribe violated the plaintiff's whistle blower rights under the Act). Likewise, the issue in this case, whether the tribal officials are subject to suit under the doctrine of *Ex Parte Young*, is separate from the underlying merits of BNSF's claim that the tax ordinance cannot be enforced against its right-of-way through the Reservation. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002) (holding that "the inquiry into whether suit lies under *Ex Parte Young* does not include an analysis of the merits of the claim").

BNSF argues that interlocutory review is inappropriate because the district court did not resolve an "important issue" completely separate from the merits of the action, but rather applied settled precedent to determine that, under the doctrine of *Ex Parte Young*, the tribal officials are not immune from suit. BNSF cites *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), and *In re Kemble*, 776 F.2d 802 (9th Cir. 1985), for the proposition that an issue is important only if it involves a "serious and unsettled" question of law. The "serious and unsettled" language BNSF cites does not define when an issue is important under this *Cohen* factor. Rather, it is a completely separate consideration, which is not normally cited as one of the elements of the collateral order doctrine. *See* 15A Charles Alan Wright et al., Federal Practice and Procedure § 3911 (2007).

**[7]** There is simply no requirement that the argument on appeal be novel. *See Schwartzman v. Valenzuela*, 846 F.2d

1209, 1210 (9th Cir. 1988) ("[T]he Supreme Court has authorized limited appellate review of a denial at the pretrial stage of a defense of immunity. State government defendants apparently now deem it mandatory to bring these appeals from any adverse ruling, *no matter how clearly correct the trial court's decision*." (citations omitted) (emphasis added)). We think the issue of tribal official immunity is analogous. The fact that the district court applied settled law to determine whether immunity barred BNSF's suit does not prevent interlocutory review.

**[8]** BNSF also contends that the tribal officials, by raising factual issues regarding ripeness and standing, have created an "evidence sufficiency" claim, which is not appealable. BNSF is correct that denial of an immunity claim is appealable on an interlocutory basis only to the extent that it turns on an issue of law. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). However, the district court's order denying the tribal officials' motion to dismiss on the basis of tribal immunity did not involve a determination that genuine issues of material fact existed for trial, as was the case in *Johnson. See id.; Armendariz v. Penman*, 75 F.3d 1311, 1316-17 (9th Cir. 1996). Rather, the district court held that under Ninth Circuit precedent BNSF's suit could proceed because "suits against tribal officers for prospective relief are not barred by sovereign immunity."

**[9]** This is not the type of evidence sufficiency claim that falls outside the collateral order doctrine. *Verizon Md., Inc.*, 535 U.S. at 645 ("In determining whether the doctrine of *Ex Parte Young* avoids [a sovereign immunity] bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " (citation omitted) (second alteration in the original)); *Mitchell*, 472 U.S. at 528 ("An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even

determine whether the plaintiff's allegations actually state a claim.").

**[10]** We join the Tenth and Eleventh Circuits in holding that denial of a claim of tribal sovereign immunity is immediately appealable under the collateral order doctrine. We therefore turn to whether the district court properly determined that BNSF's suit was not barred by tribal sovereign immunity.

**B**

Issues of tribal sovereign immunity are reviewed de novo. *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002). Absent congressional abrogation or explicit waiver, sovereign immunity bars suit against an Indian tribe in federal court. *Kiowa Tribe of Okla.,* 523 U.S. at 754. This immunity protects tribal officials acting within the scope of their valid authority. *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479-80 (9th Cir. 1985).

**[11]** Under the doctrine of *Ex Parte Young*, immunity does not extend to officials acting pursuant to an allegedly unconstitutional statute. 209 U.S. 123, 155-56 (1908) (holding that Eleventh Amendment immunity was not a bar to suit against the state's Attorney General to enjoin him from enforcing a law that the plaintiffs alleged violated the Due Process Clause of the Fourteenth Amendment). This doctrine has been extended to tribal officials sued in their official capacity such that "tribal sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law." *Burlington N. R.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991), *overruled on other grounds by Big Horn County Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000).

**[12]** In determining whether *Ex Parte Young* is applicable to overcome the tribal officials' claim of immunity, the relevant inquiry is only whether BNSF has *alleged* an ongoing

violation of federal law and seeks prospective relief. *See Verizon Md., Inc.*, 535 U.S. at 645-46. Clearly it has done so. BNSF's complaint states that "Defendants have acted, have threatened to act, or may act under the purported authority of the Tribe, to the injury of BNSF and in violation of federal law and in excess of federal limitations placed on the power of the Defendants" by seeking to enforce an unauthorized tax against BNSF that the Tribe lacks the jurisdiction to impose. Compl. ¶ 5. BNSF seeks a declaration that the tax is invalid as applied to its right-of-way and a permanent injunction prohibiting the tribal officials from enforcing the tax against it. Compl. ¶ 1. This is clearly the type of suit that is permissible under the doctrine of *Ex Parte Young*.

The tribal officials contend that *Ex Parte Young* does not apply because the officials "have taken no actions in violation of federal law and BNSF failed to prove that tribal officials intend to take such action." First, as noted above, BNSF is not required to "prove" anything; it is sufficient that the railroad has alleged a violation of federal law. Also, the requirement that the violation of federal law be "ongoing" does not require BNSF to show that the tribal officials have enforced the challenged statute. *See Wilbur v. Locke*, 423 F.3d 1101, 1104-05, 1111 (9th Cir. 2005) (holding that Eleventh Amendment immunity did not bar suit against state officials where "the complaint alleged that the challenged statutes *authorize* the state to enter into agreements which violate federal law" (emphasis added)); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846-47 (9th Cir. 2002) (rejecting defendants' argument that "the *Ex Parte Young* exception 'require[s] a genuine threat of enforcement by a state official before a federal court' can hear a party's claims").[2]

---

[2]Like the defendants in *National Audubon Society*, the tribal officials here improperly seek to engraft Article III standing and prudential ripeness considerations onto the *Ex Parte Young* analysis. Because these arguments were not properly raised on appeal or before the district court, we do not address them here.

**[13]** Although enforcement need not be imminent, the named officials must have "the requisite enforcement connection to" the challenged law for the *Ex Parte Young* exception to apply. *See Nat'l Audubon Soc'y, Inc.*, 307 F.3d at 847. We recognize the long history of efforts by the Tribe to impose and collect taxes on the railroad that resulted in a previous settlement. Easter is allegedly responsible for administering and collecting the challenged tax, and has already transmitted tax registration forms to BNSF, the first step in seeking to impose and collect more taxes. Because BNSF has alleged that Easter has "direct authority over and principal responsibility for enforcing" the tax, the *Ex Parte Young* exception applies and tribal immunity does not bar suit against her. *See id.* at 847. Charles Vaughn, the Tribal Chairman, is responsible for exercising executive authority over the Tribe. BNSF has not alleged that Vaughn is in any way responsible for enforcing the tax. Therefore the *Ex Parte Young* exception does not apply to Vaughn and suit against him is barred by tribal sovereign immunity. *See id.*

**[14]** We therefore affirm the district court's denial of the motion to dismiss with regard to Easter. We reverse with regard to the court's ruling against Vaughn; his motion to dismiss should have been granted.

### III

The exception to the final judgment rule for collateral orders does not give a court jurisdiction over every claim or defense addressed by the district court's order. Instead, we must be able to exercise jurisdiction over each issue independently. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 49 (1995). The tribal officials argue that we should exercise pendent appellate jurisdiction to review whether the district court properly denied their motion to dismiss for failure to exhaust tribal remedies.[3]

---

[3]We do not determine whether exhaustion of tribal remedies is a collateral order subject to interlocutory review under *Cohen*. The tribal officials

**[15]** A court may exercise pendent appellate jurisdiction over rulings that do not independently qualify for interlocutory review only if the rulings are inextricably intertwined with, or necessary to ensure meaningful review of, decisions that are properly before the court on interlocutory appeal. *Swint*, 514 U.S. at 51; *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 668 (9th Cir. 2004). These requirements are narrowly construed, setting "a very high bar" for the exercise of pendent appellate jurisdiction. *Poulos*, 379 F.3d at 669. That bar is not met here.

First, the tribal officials' sovereign immunity and exhaustion of tribal remedies claims are not inextricably intertwined. A court may exercise pendent appellate jurisdiction only if it "must decide the pendent issue in order to review the claims properly raised on interlocutory appeal" or if "resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Id.* (quotation marks omitted). Issues are not inextricably intertwined if different legal standards apply to each issue. *Id.* The tribal sovereign immunity claim turns on whether BNSF has alleged a continuing violation of federal law and seeks prospective relief. The exhaustion of tribal remedies claim requires the court to analyze whether there is a colorable claim of tribal court jurisdiction. These issues "turn on wholly different factors," and therefore are not inextricably intertwined. *See, e.g.*, *id.* at 670 (primary jurisdiction and class certification issues not inextricably intertwined); *Meredith v. Oregon*, 321 F.3d 807, 815 (9th Cir.

---

waived this argument by raising it for the first time in their reply brief. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004). The tribal officials also discussed for the first time in their reply brief pendent appellate jurisdiction as a basis for jurisdiction over the exhaustion of tribal remedies claim. However, pendent appellate jurisdiction was discussed by BNSF in its answering brief, so that issue has been joined and we may consider it. *See In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir. 1991) ("We have discretion to review an issue not raised by appellant, however, when it is raised in the appellee's brief.").

2003) (*Younger* abstention and preliminary injunction not inextricably intertwined); *Stewart v. Oklahoma*, 292 F.3d 1257, 1260 (10th Cir. 2002) (Eleventh Amendment immunity and exhaustion of administrative remedies not inextricably intertwined).

**[16]** Likewise, exercising pendent appellate jurisdiction where the pendent claim shares only a "tangential relationship to the decision properly before [the court] on interlocutory appeal," is not "necessary to ensure meaningful review" of that decision. *Poulos*, 379 F.3d at 669. In *Meredith v. Oregon*, the court found that review of the pendent *Younger* abstention decision was necessary to provide meaningful review of the preliminary injunction decision because "if the district court is required to abstain under *Younger* and dismiss the suit, then it has no authority to rule on a party's motion for a preliminary injunction." 321 F.3d at 816. Similar considerations are not present in this case. Determination of whether the tribal court has jurisdiction, and thus exhaustion is required, is not necessary to provide meaningful review of the tribal officials' claim that they are completely immune from suit in federal court. Because this is not one of the rare instances in which pendent appellate jurisdiction is appropriate, the remaining claims on appeal are dismissed for lack of jurisdiction.[4]

## IV

Under the collateral order doctrine, we have jurisdiction over the denial of the tribal officials' motion to dismiss on

---

[4]The district court's holding that exhaustion of tribal remedies was not required was based on its finding that the tribal officials could not make a colorable claim of tribal court jurisdiction. The tribal officials argue that the district court erred in so finding. Because we do not have interlocutory jurisdiction over the issue of exhaustion of tribal remedies at this stage of the case, we do not yet have jurisdiction to review the district court's finding regarding the scope of the tribal court's jurisdiction and we do not decide now whether this finding was correct. That issue may be considered if necessary on appeal from any final judgment below.

tribal sovereign immunity grounds. Reviewing the claim on the merits, the *Ex Parte Young* exception applies to Easter, who is allegedly responsible for enforcing the challenged tax, and tribal sovereign immunity is not a bar to suit against her. We therefore affirm the district court's denial of the motion to dismiss as to Easter. The exception does not apply, however, to the suit against Chairman Vaughn because BNSF has not alleged that he is connected to enforcement of the tax, and we reverse that part of the district court's order. Finally, we elect not to exercise pendent appellate jurisdiction over the exhaustion of tribal remedies claim as it is not inextricably intertwined with, or necessary to ensure meaningful review on interlocutory appeal, of the tribal sovereign immunity claim. The remainder of the appeal is therefore dismissed. Each party shall bear its own costs on appeal.

AFFIRMED in part; REVERSED in part; DISMISSED in part.