**BURBANK–GLENDALE–PASADENA AIRPORT AUTHORITY, a Joint Powers Agency, Plaintiff–Appellee,**

v.

**CITY OF LOS ANGELES, a California Municipal Corporation, Defendant–Appellant.**

**Nos. 90–56144, 91–55175.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 17, 1992.

Memorandum Sept. 23, 1992.

Order and Opinion Nov. 17, 1992.

Gwendolyn R. Poindexter, City Attorney's Office, Los Angeles, Cal., for defendant-appellant.

Richard K. Simon, McDermott, Will & Emery, Los Angeles, Cal., for plaintiff-appellee.

Before NORRIS, REINHARDT, and TROTT, Circuit Judges.

## ORDER

The memorandum disposition, filed September 23, 1992, is redesignated an authored opinion by Judge Norris.

## OPINION

WILLIAM A. NORRIS, Circuit Judge:

Burbank–Glendale–Pasadena Airport ("the Airport") sued the City of Los Angeles to enjoin enforcement of a City ordinance requiring prior submission and approval of any plans for development on a parcel of Airport land that is used exclusively for airplane landings and takeoffs. The district court granted a preliminary injunction and then summary judgment in favor of the Burbank Airport, holding that the ordinance was preempted under federal law. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

### I

The ordinance at issue applies exclusively to a 54–acre parcel of land owned by the Burbank Airport and located within the jurisdiction of the City of Los Angeles. When this lawsuit was filed, this parcel of land contained the northern portion of the Airport's main north-south runway and an associated taxiway (Taxiway A) which runs parallel to this runway on the east side and extends all the way to the runway's northernmost end. At that time, the parallel taxiway on the west side of the runway (Taxiway B) stopped short of the runway's northern end, terminating right at the edge of the Los Angeles boundary. This deficiency in Taxiway B posed a safety risk because it forced all aircraft approaching from the western part of the Airport to cross over the runway at its midpoint in order to begin their takeoffs from the north end of the runway.

In 1985, the Burbank Airport began to seek initial approval for a plan to lengthen Taxiway B so that it would extend all the way to the northern end of the north-south runway. This taxiway extension project was expected to produce significant safety improvements as well as noise benefits.

On June 12, 1990, right before construction was to begin on the taxiway extension project, the Los Angeles City Council enacted Ordinance No. 165, 972 ("the Ordinance"), which required the Airport to submit every proposed development project—specifically including runway and taxiway construction and reconstruction—to the City Planning Commission for prior review and approval. The Ordinance provided, in pertinent part, that:

"Prior to the issuance of any building or use permit or certificate of occupancy for any project, or the *construction or reconstruction of runways or taxiways,* a complete and detailed development plan indicating the exterior boundaries of the property, the location of all buildings, driveways, service road, maintenance areas, accessways, parkway areas, taxi-

ways, runways, enclosing fixtures, landscaping, etc., shall be *submitted to and approved by* the City Planning Commission pursuant to the following provisions and procedures:

"A. The City Planning Commission shall have the authority to approve such development plan if it finds: (i) that the proposed development will be *desirable to the public convenience or welfare,* and (ii) that the proposed development will be *in harmony with the objectives and intent* of the Sun Valley Community Plan, and (iii) that the proposed development will *not have an adverse impact on existing or planned development* in the vicinity.

"B. The Commission shall determine that *all adverse environmental impacts* of such development including, but not limited to air quality, noise, water quality and traffic generation have been mitigated to a level of insignificance.

"C. The Commission *may impose such conditions as it deems necessary* to secure an appropriate development in harmony with the objectives and intent of the Sun Valley Community Plan...."

Ordinance No. 165, 972 (emphasis added).

The Ordinance was adopted on an emergency basis and was made effective immediately upon publication because, in the words of the Ordinance, such regulation was "required for the immediate protection of the public peace, health and safety. This Ordinance will prevent potentially irreversible and incompatible development in the Glendale–Pasadena–Burbank Airport area." *Id.*

Burbank Airport filed this action on June 29, 1990, seeking a preliminary injunction to enjoin enforcement of the Ordinance. The district court granted the preliminary injunction on July 30, 1990. Following entry of the preliminary injunction, the City of Los Angeles noticed an appeal, but made no effort to obtain a stay. Meanwhile, the Airport went forward with construction of the taxiway extension project without submitting its plans to the City.

■ On November 16, 1990, after the taxiway project was completed, the Airport moved for summary judgment declaring the Ordinance invalid. The district court granted summary judgment on December 10, 1990, holding that the Ordinance was preempted by federal law, both on its face and as applied. The City of Los Angeles timely appeals the entry of summary judgment.[1]

## II

■ We review a grant of summary judgment *de novo. Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989). The relevant facts in this case are not in dispute; the dispositive question is whether the Ordinance is preempted by federal law, in particular the Federal Aviation Act, 49 U.S.C.App. § 1301 *et seq.,* and the Noise Control Act, 49 U.S.C.App. § 1431 *et seq.*[2]

■ It is settled law that non-proprietor municipalities are preempted from regulating airports in any manner that directly interferes with aircraft operations. *See City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *San Diego Unified Port District v. Gianturco,* 651 F.2d 1306, 1314 (9th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). Although the City of Los Angeles concedes that it is prohibited from controlling aircraft operations, it argues that this Ordinance is a legitimate exercise of the City's police powers that in no way impinges upon

1. The City also appeals from the entry of preliminary injunction. The validity of the preliminary injunction is mooted, however, by the subsequent granting of summary judgment. Once an order of permanent injunction is entered, the preliminary injunction merges with it and appeal may be had only from the order of permanent injunction. *Securities and Exchange Commission v. Murphy,* 626 F.2d 633, 637 n. 1 (9th Cir.1980).

2. Although the extension of Taxiway B has now been completed, this case is not moot because the Ordinance purports to give the City continuing control over taxiway and runway reconstruction, and over any future project that may be contemplated for this property.

the areas preempted by federal regulation. We disagree.

The problem with this Ordinance is that it conditions the construction and re-construction of taxiways and runways on the prior approval of the City. This the City may not do. The proper placement of taxiways and runways is critical to the safety of takeoffs and landings and essential to the efficient management of the surrounding airspace. The regulation of runways and taxiways is thus a direct interference with the movements and operations of aircraft, and is therefore preempted by federal law.

Stated simply, a non-proprietor municipality may not exercise its police power to prohibit, delay, or otherwise condition the construction of runways and taxiways at a non-city-owned airport. Because this Ordinance applies to a parcel of land that is used exclusively for runways and taxiways, and because this area is already subject to a federal prohibition against the construction of any buildings, *see* 14 C.F.R. §§ 77, *et seq.*, we see no reason to speculate about any potentially legitimate applications of this Ordinance. Accordingly, we hold this Ordinance to be invalid on its face.

The district court's grant of summary judgment is AFFIRMED.